UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DAVALL, CDCR #AW-8294,<br><br>        Plaintiff,<br><br>  vs.<br><br>A. CORDERO; D. WHITE; WHITMAN,<br><br>        Defendants. | Case No.: 3:20-cv-1968 JLS (KSC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>(ECF No. 9) |

Presently before the Court is Plaintiff Joseph Davall's Motion for Temporary Restraining Order and Preliminary Injunction ("Mot.," ECF No. 9). Defendant Cordero filed a Response in Opposition to ("Opp'n," ECF No. 15), and Plaintiff filed a Reply in support of ("Reply," ECF No. 28), the Motion. The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 20. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

Plaintiff, an inmate currently incarcerated at Calipatria State Prison, filed the present civil rights action pursuant to 42 U.S.C. § 1983. *See generally* Complaint ("Compl."), ECF

No. 1.  Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by not permanently housing him in a single cell.  *See id.* at 3–5.

In early July 2019, Plaintiff met with Defendant Cordero and informed him that Plaintiff needed a single cell because his cellmate was asking for "paperwork to prove that [Plaintiff] was not a sex offender."  *Id.* at 3.  Plaintiff claims that he is at risk of being assaulted by other inmates while in his cell "if they find out that [Plaintiff] is a sex offender."  *Id.*  Cordero told him, however, that he could not have a single cell.  *See id.*  Cordero purportedly told Plaintiff that he would "have to do something really bad to get a single cell."  *Id.*

In mid-July 2019, Plaintiff "again approached Counselor Cordero and informed him that [his cellmate] was becoming more aggressive and demanding paperwork."  *Id.*  Plaintiff again requested a single cell, but Defendant Cordero denied that request.  *See id.*  On July 28, 2019, Plaintiff alleges he was attacked by his cellmate, which resulted in two broken fingers, and Plaintiff received a "write up causing credit loss."  *Id.*  On September 17, 2019, Plaintiff was placed in "disciplinary segregation" for 180 days.  *Id.* at 4.

Plaintiff filed an administrative grievance on February 14, 2020, seeking single cell status, but his request was denied by Associate Warden Whitman.  *See id.* at 5.  Plaintiff "requested a single cell . . . because the other inmates here are violent and they prey on sex offenders."  *Id.*  Plaintiff claims he "should not have to wait to be assaulted again to get a single cell."  *Id.*

After filing this action, Plaintiff alleges that he "was sexually assaulted again . . . by [his] celley."  Mot. at 2.  Plaintiff and his cellmate were separated while an investigation was performed.  Opp'n at 3.  Plaintiff was assigned to a single cell, where he remains today.  *Id.*

On November 5, 2020, the District Court conducted the sua sponte screening of Plaintiff's Complaint as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and dismissed Plaintiff's claims against Defendant White but determined that Plaintiff alleged sufficient factual content to survive initial screening as to his Eighth Amendment claim against

Defendants Cordero and Whitman. ECF No. 4 at 8–9. On November 18, 2020, Plaintiff moved for reconsideration of the sua sponte dismissal of Defendant White, which the Court denied. *See* ECF Nos. 7, 11. On December 2, 2020, Plaintiff filed the present Motion for a preliminary injunction and temporary restraining order seeking single-cell status pending a determination of his case on the merits. *See* ECF No. 9.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of temporary restraining orders. The standard for a temporary restraining order ("TRO") is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). "[T]he basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The decision of whether to grant or deny a motion for preliminary injunction is a matter of the district court's discretion. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The elements of this test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell,* 622 F.3d 1045, 1049–50 (9th Cir. 2010), *rev'd on other grounds*, 632 F.3d 1127 (9th Cir. 2011). Generally, a temporary restraining order is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

///
///
///

The Prison Litigation Reform Act requires any injunctive relief to satisfy additional requirements when a prisoner seeks preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators— no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 998–99 (9th Cir. 2000).

## ANALYSIS

**I.  Likelihood of Success on the Merits**

Plaintiff contends that placing him in a double cell at Calipatria violated the Eighth Amendment bar against cruel and unusual punishment. *See* Compl. at 8. Specifically, Plaintiff argues that because he is a sex offender, he is a target for violence when he is housed with another inmate in a double cell, which amounts to a "failure to protect." *See id.*

The Eighth Amendment protects prisoners from "inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prisoners are entitled to "adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). However, the Eighth Amendment does not mandate comfortable prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
///

Prisons can be both restrictive and harsh without violating the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"An Eighth Amendment failure to protect claim has two elements: (1) the condition complained of must be shown to present a substantial risk of serious harm, and (2) the defendant must be shown to have possessed a sufficiently culpable state of mind." *Palacios v. Chavez*, No. C 06–7619 PJH, 2011 WL 4527467 at *1 (N.D. Cal. Sept. 29, 2011); *see also Farmer*, 511 U.S. at 834. To satisfy the second requirement, a prisoner must allege that the prison official acted with "deliberate indifference." *Farmer*, 511 U.S. at 834. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

First, the facts and evidence presented tend to show that Plaintiff has failed to identify an objectively substantial risk of serious harm presented by a specific inmate. A generalized threat of fear does not satisfy the objective prong of *Farmer*. *Turner v. Bunn*, No. 96-35383, 1997 WL 51558, at *2 (9th Cir. 1997) (holding that expressing only a general fear of harm by other inmates fails to create a triable issue of fact as to the risk of serious harm). Plaintiff states that he is "in imminent danger of sexual assault, physical assault [and] battery, extortion, and any number of 'punishments' for [his] commitment offense . . . ." Mot. at 2. To support this assertion, Plaintiff relies on "the multiple assaults [he has] suffered so far." *Id.* at 3.

Plaintiff's Complaint and Motion identify two alleged incidents of assault at Calipatria as the basis for his Eighth Amendment claim.[1] Sexual abuse does constitute "serious harm," *see Farmer*, 511 U.S. at 833–34; however, Defendant has submitted factual material attacking the credibility of Plaintiff's claims. Plaintiff had two different cellmates

---

[1] Plaintiff also generally states that "[he] suffered [sexual assault] by [his] celley at a previous institution." Reply at 1.

from March 17, 2020, to July 7, 2020, and Defendant submitted evidence that there were no reported incidents with either cellmate. Opp'n at 3 (citing Declaration of M. Whitman ("Whitman Decl.") ¶ 7, ECF No. 15-1).

Regarding the July 28, 2019 incident, Defendant presented evidence that Plaintiff was the aggressor. Opp'n at 2 (citing Whitman Decl. ¶ 2). Defendant argues that "Plaintiff is the one who attacked [his cellmate]," and "Plaintiff later pled guilty to Battery on an Inmate as result of the incident." Opp'n at 6–7. Defendant further contends that "although the incident involved his cellmate, single-cell status would not have prevented the fight because it occurred on the way to the cafeteria that all Facility D inmates use." *Id.* at 6. Plaintiff argues that "the fight was a direct result of the double cell placement." Reply at 2. Plaintiff contends that he "was defending [himself] against [his] celley's increasing aggression over h[im] want[ing] [Plaintiff] to show him paperwork that proves [Plaintiff is] not a sex offender." *Id.*

Regarding the October 2020 incident,[2] Defendant's internal investigation showed Plaintiff's allegations that his cellmate sexually assaulted him were unsubstantiated. Opp'n at 7; *see* Ex. 1 at AGO 33–42. Despite the results of the investigation, Plaintiff and his cellmate were immediately separated, and Plaintiff remains in a single cell to address Plaintiff's safety concerns. Opp'n at 7.

Second, Plaintiff has not satisfied the subjective prong of *Farmer* by sufficiently showing Defendant acted with "deliberate indifference." As an initial matter, Plaintiff does not have a constitutional right to be housed at a particular institution or in a particular cell. *See Olim v. Wakinekona*, 461 U.S. 238, 244-50 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976). Defendant assigned Plaintiff to "Facility D, a Sensitive Needs Yard that is designed to house inmates with safety

---

[2] Plaintiff stated in his Motion that the incident occurred on October 24, 2020, Mot. at 3; however, Defendant's evidence shows Plaintiff informed staff of the incident on October 22, 2020, *see* Opp'n at 1 n.1. For simplicity, the Court will refer to the incident as occurring in October 2020.

concerns, including sex offenders," when he arrived at Calipatria State Prison on July 3, 2019. Opp'n at 1 (citing Whitman Decl. ¶ 2).

Defendant's evidence tends to show Defendant acted reasonably in assuming Plaintiff could be placed safely with a cellmate because he voluntarily signed five compatibility or safety chronos. Opp'n at 8–9 (citing Ex. 1 at AGO 31-32, 41, 50, and 95). Prior to the October 2020 incident,

> Plaintiff was assigned to cell with an elderly inmate who was considered compatible because of his history of celling with Plaintiff in 2019 without incident. Plaintiff was given the opportunity to move to a single cell in a different housing unit, but declined, indicating Plaintiff did not have serious safety concerns.

Opp'n at 7 (citing Ex. 1 AGO 1-2, 72-84, ECF No. 15-2).

Therefore, the Court's review of the record does not reveal facts to support a finding that Plaintiff may succeed on the merits of his Eighth Amendment claim. Although Plaintiff's claims against Defendants Cordero and Whitman survived initial screening, the Court's determination that Plaintiff may be able to state a claim against Defendants "by no means demonstrates that [he] is likely to win." *Ortega v. CSP-SAC Prison Officials*, No. 2:08–00588 SOM, 2010 WL 2598228, at *1 (D. Haw. June 7, 2010).

Accordingly, the Court finds this factor weighs against the issuance of a TRO or preliminary injunction.

**II.   Irreparable Harm**

An adequate showing of irreparable harm is the "single most important prerequisite for the issuance of a [TRO]." *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685, at *2 (N.D. Cal. Nov. 29, 2016) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). To successfully make that showing, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than

merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (citing *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1201) (emphasis in original)).

Here, Plaintiff generally states that he is "more likely to suffer irreparable harm if placed in a double cell again." Mot. at 2. To support this claim, Plaintiff alleges that after he filed the present action, he "was sexually assaulted again on 10-24-2020 by [his] celley." Mot. at 2. However, as discussed *supra* in Section I, Defendant submitted evidence disputing that an attack occurred in October 2020 and reflecting that Plaintiff was the aggressor in the July 2019 incident that took place outside the cell. *See* Opp'n at 2–3; *see also* Whitman Decl. ¶¶ 3–10. These submissions reflect that Plaintiff has been involved in altercations from time to time and that the parties dispute the circumstances. This evidence is insufficient to establish that Plaintiff will suffer immediate irreparable injury absent an injunction.

The Court finds that Plaintiff's risk of future sexual assault is not immediate at this time. Without more, Plaintiff has failed to establish that he currently faces the type of immediate and credible threat of irreparable harm necessary to justify extraordinary injunctive relief at this stage of the case. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("Under *Winter*, plaintiff[ ] must establish that irreparable harm is *likely*, not just possible." (emphasis in original)); *Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury.").

### III.  Balance of Equities and Public Interest

"When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020).

States have a strong interest in the administration of their prisons. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). The Supreme Court has stated that "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser*

*v. Rodriguez*, 411 U.S. 475, 491–92 (1973); *see also Turner v. Safley*, 482 U.S. 78, 85 (1987) ("[W]here a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."); *Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("Federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States."). Accordingly, Courts should give deference to prison authorities. *See Turner*, 482 U.S. at 84–85.

On the other hand, the public is served by the preservation of constitutional rights. However, in this instance, Plaintiff has not made the requisite showing that his constitutional rights have been violated. Therefore, the balance of equities and the public interest weigh against the issuance of a TRO or preliminary injunction.

## CONCLUSION

In conclusion, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in original). For the reasons stated above, Plaintiff has not met his burden, and the Court **DENIES** Plaintiff's Motion for TRO and Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

Dated: February 18, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge