UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DAVALL, CDCR #AW-8294,<br><br>                    Plaintiff,<br><br>v.<br><br>A. CORDERO; D. WHITE; WHITMAN,<br><br>                    Defendants. | Case No.: 20-cv-1968-JLS-KSC<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 68, 71]** |

Plaintiff Joseph Davall ("plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to protect him from an excessive risk to his safety. *See generally* Doc. No. 1. Before the Court are plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and defendants' Motion for Summary Judgment ("Defendants' Motion," and, collectively, the "Motions"). *See* Doc. Nos. 68, 71. Pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1, the undersigned Magistrate Judge submits this Report and Recommendation to United States District Judge Janis L. Sammartino. For the reasons stated below, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendants' Motion be **GRANTED**.

# I. BACKGROUND

## A. **Factual Background**

In 2015, a jury found plaintiff guilty of forcibly raping a 12-year-old girl and other associated offenses.[1] *See* Doc. No. 68 at 1; Doc. No. 71-1 at 87-88; Doc. No. 71-2 at 26-27.[2] He is currently serving a sentence of life without parole at Calipatria State Prison ("Calipatria"). Doc. No. 71-1 at 90.  Plaintiff arrived at Calipatria in August 2015, but was transferred in July 2016 to the county jail in Riverside while awaiting trial on burglary charges unrelated to the rape. *Id.* at 89-90; *see also* Declaration of M. Whitman in Support of Defendants' Motion for Summary Judgment ("Whitman Decl.," Doc. No. 71-6), ¶ 4. He remained in Riverside from 2016 through 2019. *Id.*

### 1.  Plaintiff's Cell Placement Upon Return to Calipatria

Plaintiff returned to Calipatria on July 3, 2019. Whitman Decl., ¶ 5. As a convicted sex offender, plaintiff is not eligible to be housed in the general population, and therefore plaintiff was placed on the Sensitive Needs Yard ("SNY"). *See* Doc. No. 71-1 at 100-01; Whitman Decl., ¶ 6. After being screened for an appropriate housing assignment,[3] plaintiff was assigned to a double cell with inmate Maldonado. Doc. No. 71-1 at 134; Whitman Decl., ¶ 5. According to plaintiff, trouble with Maldonado began shortly thereafter, with Maldonado demanding "several times" that plaintiff show him "paperwork." Doc. No. 71-

---

[1] These included: penetration by force, criminal threat to cause great bodily injury or death, assault with a deadly weapon, and second-degree burglary. *See* Doc. No. 71-2 at 26.

[2] Citations are to the page numbers assigned by the Court's CM/ECF system, except for citations to declarations which refer to the paragraphs as numbered therein.

[3] The regulations provide that all inmates are expected to double cell, unless the staff determine that single cell status is appropriate. *See* Cal. Code Regs. tit. 15, § 3269 (hereafter "Section 3269"). Prison staff consider many factors when making this determination. *See id.* At Calipatria, housing assessments were made by a Classification Committee upon arrival and, pursuant to regulations, were reassessed every year thereafter and on an *ad hoc* basis. *See id.* at § 3269(b) - (d); Doc. No. 71 at 10.

1 at 134. Plaintiff interpreted Maldonado's request to mean that Maldonado wanted to "see paperwork proving my commitment offense, why I'm in here. Most of the time that means 'Are you a sex offender, or are you okay? Are you good, or are you no good?'" *Id.* at 134. Plaintiff testified that he keeps papers in his cell that would reveal his commitment offense, and that he did not show Maldonado these papers because "that would have resulted in immediate assault." *Id.* at 135.

Plaintiff testified he told defendant A. Cordero ("Cordero"), a corrections officer, about Maldonado's demands and "asked him if there was any way I could get something saying I am not a sex offender." Doc. No. 71-1 at 129. Plaintiff also requested to be placed in a single cell. *Id.* at 128. Plaintiff states that Cordero refused to give him false paperwork and told plaintiff that he could not be put in a single cell unless plaintiff "[did] something really bad." *Id.* at 128, 136-37. Plaintiff did not ask for a new cellmate or to be moved elsewhere. *Id.* at 137. He explained that he believed "the danger would have been the same, or worse" if he had moved, because the "policy" among inmates that sex offenders are "[p]ersona non grata" is "the same everywhere." *Id.* at 137; *see also id.* at 142-43 (plaintiff stating that "every inmate knows" it is the "unspoken" "policy" among inmates who were gang members to "assault or kill any sex offender immediately upon knowledge of that commitment offense"). Plaintiff also did not report his concerns about Maldonado to anyone but Cordero. *Id.* at 139.

Plaintiff testified that Maldonado demanded that plaintiff move out of the cell when plaintiff failed to provide the requested paperwork. Doc. No. 71-1 at 139. Plaintiff refused to leave because it was "his cell" and Maldonado "moved in with me." *Id.* at 139. Maldonado continued to demand plaintiff's paperwork, but he did not make any explicit threats, nor was he "physical" with plaintiff. *Id.* at 140, 147. Nevertheless, plaintiff perceived Maldonado's continued demands as "aggressive" behavior because "every inmate knows that if you do not provide the paperwork eventually, you will be automatically assumed as hiding something, and the results will be the same." *Id.* at 140-

41. Plaintiff spoke to Cordero again about Maldonado's "aggressive" behavior, reiterating his requests for false paperwork or placement in a single cell; Cordero again declined. *Id*.

### 2. July 28, 2019 Incidents with Inmates Maldonado and Carlson

Matters came to a head on July 28, 2019, when plaintiff and Maldonado were involved in a physical altercation in the yard during mealtime. *See* Doc. No. 71-1 at 236-237. Plaintiff told officers at the time that he started the fight when he "jumped" Maldonado. *See id.* at 240. At his deposition, however, plaintiff denied that he was the instigator, stating that he and Maldonado "started fighting at the same time." *Id*. at 147. As plaintiff recounted it, Maldonado "flinched" in his direction and "looked like he was going to move towards me." *Id.* at 147-148. Maldonado threw a punch at plaintiff but missed, and plaintiff "punched [Maldonado] back." *Id.* at 148. During the 30-second melee, Maldonado landed a single strike against plaintiff; plaintiff punched Maldonado "20, 25" times, breaking his two pinky fingers in the process. *Id.* at 148-49; *see also* Doc. No. 68-1 (x-ray results dated July 30, 2019, reporting findings of bilateral finger fractures). The fight ended when an officer sprayed plaintiff and Maldonado with pepper spray. Doc. No. 71-1 at 148, 236.[4]

Immediately following this incident, plaintiff was removed from the cell with Maldonado and assigned to a cell with inmate Carlson. *Id.* at 153. Plaintiff testified that when he went into the cell, Carlson asked him for "paperwork," at which point he exited the cell and refused to be celled with Carlson. *Id.* Officers repeatedly asked plaintiff why he could not cell with Carlson, but he would not say, stating only "I can't tell you" and "I can't be on this yard." *Id.* at 251.

### 3. Disciplinary and Housing Actions After July 28, 2019

---

[4] Plaintiff and Maldonado were interviewed by a Correctional Sergeant and a Program Sergeant after the incident and reported that their altercation "was a misunderstanding" and that "they ha[d] settled their differences." Doc. No. 71-1 at 265. Both inmates also stated they could "safely program together on Facility D without incident, and [did] not consider each other enemies." *Id.*

4

Plaintiff was issued two Rules Violation Reports ("RVRs") for the events on July 28, 2019: battery on a fellow inmate, and refusing to accept assigned housing. *See* Doc. No. 71-1 at 236-41, 251-254. Plaintiff pled guilty to both offenses. *See id.* at 244, 258. Based on plaintiff's plea and the other evidence before it, on August 10, 2019, a Disciplinary Committee found plaintiff guilty of refusing to accept his assigned housing. *Id.* at 255-63. At the hearing, plaintiff's only explanation to the Committee was that "[t]he inmate inside the cell I was going into was asking for my paperwork and I didn't have it with me." *Id.* at 258. He also told the Disciplinary Committee that he did not have any enemy or safety concerns at that time. *Id.* at 261. A separate Disciplinary Committee hearing was held on August 19, 2019 regarding the charge of battery on an inmate. *See id.* at 241-50. Plaintiff appeared but did not give a statement. *Id.* at 244. Based on his guilty plea and other evidence, the Disciplinary Committee found plaintiff guilty of the battery charge. *See* Doc. No. 71-1 at 241-50. Plaintiff did not appeal these disciplinary findings. *See id.* at 5, 25. As a result of the disciplinary findings arising from the July 28, 2019 altercation, plaintiff was placed on "C Status" or administrative segregation for 180 days. *Id.* at 177. Plaintiff explained that meant he was "confined in [his] cell with no privileges." *Id.* Plaintiff did not have a cellmate during this time. *Id.* at 177.

On July 31, 2019, the Classification Committee reviewed plaintiff's housing assignment, noting that he had recently been charged with battery on his cellmate. Doc. No. 71-2 at 2, 105-08. The Classification Committee noted that plaintiff did not have a "pervasive pattern of in-cell misconduct" and that on question, plaintiff stated he had "no problem" with his cellmate or with being double-celled. *Id.* Plaintiff was therefore "approved for double cell housing with no special restrictions." *Id.*

The Classification Committee met again on September 17, 2019, after plaintiff had been found guilty of the two disciplinary charges and rescinded their earlier recommendation that plaintiff be transferred to a lower-security prison. Doc. No. 71-2 at 5-9, 101-04. The Classification Committee did not change their earlier assessment that double-cell housing was appropriate. *Id.*

The record reflects further assessments by the Classification Committee on June 25, 2020, May 11, 2021, and September 28, 2021, with no change to his double-cell classification. *See* Doc. No. 71-2 at 13, 86, 90, 94. Plaintiff was informed of his right to appeal the Classification Committee's decisions, but did not do so. *See id.* at 88, 92, 96, 107, 111.

### 4. Plaintiff's Grievance Regarding His Cell Assignment

On February 14, 2020, approximately seven months after the incident with Maldonado, plaintiff filed a grievance regarding his cell assignment. Doc. No. 71-1 at 10. Plaintiff stated that "[p]ursuant to [Cal. Code Regs. tit. 15, §] 3269(a)," his commitment offense was "a safety issue for double cell" and that "past history cell assignments ha[d] already caused [him] harm over this issue." *Id.* Under "Action Requested," plaintiff stated: "I need a single cell to protect my safety, and or, the safety of my celley seeking to harm me for the nature of [my] commitment offense." *Id.* Whitman denied this request on March 25, 2020. *Id.* In a letter to plaintiff of that date, Whitman explained that plaintiff was not eligible for single-cell status, noting that plaintiff had been interviewed by staff and denied any active safety concerns, but rather a belief that his commitment offense entitled him to single-cell housing. *Id.* at 16. Whitman also noted that the regulations did not provide for single-cell housing on the basis of "an isolated incident." *Id.*

Plaintiff appealed the decision to the second level review on April 6, 2020. Doc. No. 71-1 at 11. Explaining why he disagreed with the decision, plaintiff stated, for the first time, that he had been raped by his cellmate in Riverside County Jail. *Id.* He also stated that at Calipatria, he had been "victimized" by his cellmate and was "forced to defend [him]self," referring to the incident with Maldonado. *Id.* Plaintiff claimed that both incidents were "a result of [his] commitment offense" and asked staff to "review [his] file again for single-cell status." *Id.* Plaintiff acknowledged at his deposition that April 6, 2020 was the first time plaintiff told anyone that he had been raped. *Id.* at 171; *see also id.* at 186 ("Q. So you didn't tell any prison staff about that rape until April 6, 2020? A. Correct.").

Chief Deputy Warden S. Moore denied plaintiff's second-level appeal on May 26, 2020. Doc. No. 71-1 at 11. In a letter to plaintiff of that date, Moore explained that plaintiff still did not meet the criteria for single-cell status, and informed him that he could appeal the decision to the third level of review. *Id.* at 12-14.

Plaintiff appealed to the third level of review. Doc. No. 71-1 at 9. In his appeal, plaintiff complained that staff had not properly evaluated his eligibility for single-cell housing. *Id.* Plaintiff stated that he had been placed in a cell with "drop out" and "active" gang members "many times" and that "each time" his life was in danger. *Id.* By letter dated August 31, 2021, CDCR's Office of Appeals informed plaintiff that "[u]pon review of the Second Level Response previously issued to you and the written record in this case, the Office of Appeals has determined that the Second Level Response to your claim . . . shall serve as the Department's final decision." Doc. No. 71-1 at 7.

## B. Procedural History and Plaintiff's Remaining Claim

Plaintiff filed his Complaint and a Motion for leave to proceed *in forma pauperis* ("IFP") on October 5, 2020. Doc. No. 1. After granting plaintiff's IFP Motion, the District Court screened plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2). Doc. No. 4. As a result of that screening, the District Court determined that plaintiff failed to state a cognizable Fourteenth Amendment claim against defendant White, but found that:

> Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state Eighth Amendment claim for relief that is "plausible on its face," *Iqbal*, 556 U.S. at 678, and therefore, sufficient to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (failure to protect claims under the Eighth Amendment require a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety.").

Doc. No. 4 at 9.[5]

---

[5] Plaintiff later moved for reconsideration regarding dismissal of the claims against White, which was denied. *See* Doc. No. 7; Doc. No. 11.

On December 2, 2020, plaintiff moved for the issuance of a preliminary injunction and temporary restraining order, seeking an order that "defendant Whitman and each of his officers, agents, employees and all persons acting in concert or participating with them are restrained from placing [plaintiff] in a double cell." Doc. No. 9. The District Court denied the Motion on February 18, 2021. Doc. No. 30. The District Court noted that the alleged assault in July 2019 and a second alleged assault in October 2020 formed the "basis" of plaintiff's Eighth Amendment claims against Cordero and Whitman. *Id.* at 5. Analyzing the evidence before it, the District Court determined that plaintiff had not established "a substantial risk of serious harm presented by a specific inmate," and had also not established that he was likely to succeed on the merits of his failure-to-protect claim. *Id.* at 5-7. The District Court therefore found that the "'extraordinary and drastic remedy'" of a preliminary injunction was not warranted. *Id.* at 9.

On January 19, 2021, Whitman moved to dismiss plaintiff's claims against her. *See* Doc. No. 22. At this time, Cordero had not been served and had not appeared in the action. On June 1, 2021, the District Court granted the Motion to Dismiss in part and denied it in part. *See generally* Doc. No. 37. The District Court observed that plaintiff's "only allegations against Whitman arise from her response to [his February 14, 2020] grievance." *Id.* at 8. To the extent plaintiff alleged that Whitman's response to the grievance was in violation of his Eighth Amendment rights, the District Court found, he had not pled sufficient facts that would "'allow[] the court to draw the reasonable inference' that Whitman knew he faced a substantial risk of danger, and yet chose to ignore it." *Id.* (citing *Iqbal*, 556 U.S. at 678 and *Farmer*, 511 U.S. at 847). Plaintiff's Eighth Amendment claim against Whitman in her individual capacity was therefore dismissed. *Id.*

However, the District Court also noted that plaintiff sought injunctive relief and found that because plaintiff alleged that "the 'CDCR policy' to 'not give a single cell until after violence has occurred' violates his constitutional rights," and further alleged that Whitman was "the appropriate official to handle his request for injunctive relief," Whitman was appropriately named in her official capacity. Doc. No. 37 at 8-9. The District Court

dismissed plaintiff's claims against Whitman based on the Prison Rape Elimination Act ("PREA"), finding that PREA did not create a private cause of action. *Id.* at 9-10. Finally, the District Court directed additional measures be taken to effectuate service of the Complaint upon Cordero. *Id.* at 11-12.

Whitman answered the Complaint on June 15, 2021. Doc. No. 38. Cordero answered on August 30, 2021. Doc. No. 54.

## II. LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "principal purpose[] of Rule 56 is to dispose of factually unsupported claims or defenses." *Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1087 (S.D. Cal. 2006) (citation omitted).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rule 56 requires the moving party to state the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56).

The showing required by the moving party depends upon whether that party bears the burden of proof at trial. A party who moves for summary judgment on an issue or claim upon which it does ***not*** bear the burden of proof at trial must simply demonstrate that the non-moving party lacks evidence upon which a reasonable jury could find in the nonmoving party's favor. *Oracle*, 627 F.3d at 387. Where the moving party bears the burden of proof at trial, however, "'that party must show affirmatively the absence of a genuine issue of material fact,' that is, '[that] no reasonable jury could find for the non-moving party.'" *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (citation omitted). "Once the movant has made this showing, the burden then shift to the

party opposing summary judgment to designate 'specific facts showing there is a genuine issue for trial.'" *Id.* The non-moving party must then "point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, that could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citations omitted). The Court must assess the movant's entitlement to summary judgment based on the record before it and "with the evidence viewed in the light most favorable to the non-moving party." *San Diego Police Officers Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

## III.   DISCUSSION

Before proceeding to the merits of the parties' arguments, the Court addresses what plaintiff has labeled a "procedural default" in defendants' Motion. *See* Doc. No. 73 at 1. Plaintiff notes that he filed his Motion on March 11, 2022 and that defendants' Motion was filed on March 25, 2022. *Id.* Plaintiff therefore asserts that "by filing a separate motion rather than responding to my motion for summary judgment defense counsel is removing her burden as the non-moving party and forcing that burden on me." *Id.* The Court reminds plaintiff that the parties' deadline to file their summary judgment motions was extended upon a joint request of the parties. *See* Doc. No. 67. Defendants' Motion was timely, even if filed after plaintiff's Motion. Furthermore, as explained above, the parties' respective burdens on summary judgment are not determined by the order in which the motions were filed, but by reference to the parties' burdens of proof at trial. For these reasons, the Court rejects plaintiff's charge of gamesmanship, and finds no procedural impropriety in defendants' Motion. The Court turns now to the parties' arguments in support of summary judgment.

## A. Exhaustion

The PLRA requires inmates challenging the conditions of their confinement to exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. §1997e(a). "Exhaustion is mandatory[,]" but where an administrative remedy is

"effectively unavailable" to the inmate, a failure to exhaust that remedy "does not bar a claim from being heard in federal court." *Soto v. Sweetman*, 882 F.3d 865, 869-70 (9th Cir. 2018) (internal quotation marks and citation omitted). A prisoner's failure to exhaust administrative remedies is an affirmative defense for which defendants bear the burden of proof. [6] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*). At summary judgment, defendants' burden is "to prove that there was an available administrative remedy, and that the prisoner did not exhaust it." *Id*.

Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust the available administrative remedies before filing suit, because he never filed a grievance that named Cordero (or Whitman, for that matter) or that referred to the incident with Maldonado. Doc. No. 71 at 8, 17. Plaintiff concedes that he did not name Cordero or Whitman in his grievance form, but asserts that he was not required to do so. *See* Doc. No. 73 at 2-3. Instead, plaintiff asserts, he was required to do nothing more than assert the "operative fact" of his request for a single cell and that identifying this "operative fact" "satisfies the exhaustion requirement." *Id.* at 3. That *may* have been true with respect to any Eighth Amendment claim arising out of Whitman's denial of plaintiff's request for single-cell status.[7] But, the Court need not resolve the question of whether anything more was required because, as explained above, the District Court has already dismissed plaintiff's claim for deliberate indifference as against Whitman. Doc. No. 37 at 8. The only remaining Eighth Amendment claim is for Cordero's alleged deliberate indifference.

As to that claim, the Court finds the evidence of plaintiff's failure to exhaust irrefutable. The Court begins with plaintiff's February 14, 2020 grievance form, in which

---

[6] Whitman and Cordero each pled plaintiff's "Failure to Exhaust Administrative Remedies" as an affirmative defense. *See* Doc. No. 38 at 3; Doc. No. 54 at 3.

[7] The Court notes that the Office of Appeals informed plaintiff in its August 31, 2021 letter regarding his request for single-cell status that "[his] administrative remedies have been exhausted for this appeal issue." Doc. No. 71-1 at 7.

plaintiff states – and states only – that his classification for double-celling "is a safety issue" and that his past cell assignments "caused him harm." Doc. No. 71-1 at 30-31. Cordero is not identified by name, and there is no information whatsoever that resembles the allegations in the Complaint against Cordero – *i.e.*, that plaintiff informed him of Maldonado's perceived threats and that Cordero failed to appropriately act on that information. There is a generic reference to "staff" having disposed of documents related to plaintiff's grievance, specifically the "last 2 R.V.R.'s and C status placement." *Id.* But, even reference to these documents would not clarify Cordero's involvement, because neither the RVRs nor the disciplinary proceeding reports make any reference to plaintiff's conversations with Cordero before the July 28, 2019 incident with Maldonado. Plaintiff's replies to the First Level and Second Level responses to his grievance likewise do not identify Cordero by name and do not state any of the facts that form the basis of plaintiff's Eighth Amendment claim against him.[8] *See id.* at 9, 31.

Defendants also submit the declarations of Howard E. Moseley ("Moseley Decl.," Doc. No. 71-4), the Associate Director of the Office of Appeals ("OOA") for CDCR, and P. Lopez ("Lopez Decl.," Doc. No. 71-5), the Appeals Coordinator at Calipatria. Moseley states that at all times relevant to this action, inmates were required to follow the procedures set forth in Title 15, sections 3084-3085 of the California Code of Regulations to pursue a grievance. Moseley Decl., ¶ 6; *accord* Cal. Code Regs. tit. 15 §§ 3084-3085 (2019) (repealed June 1, 2020).[9] Both declarants attest that they directed a search of their

_____

[8] In replying to the First Level response, plaintiff stated he "was victimized by my celley . . . as a result of [his] commitment offense," apparently referring to the incident with Maldonado. Id. at 31. However, when questioned about this statement, plaintiff stated only that "he felt he was victimized by the system that housed him with an inmate he felt he was incompatible with and subsequently fought with . . ." Doc. No. 71-1 at 19. He denied enemy or safety concerns at the time. *Id.* There is no reference to Cordero. *Id.*

[9] "On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and

respective offices' records and that plaintiff's February 14, 2020 grievance is the only grievance filed by plaintiff relating to his single-cell status or the alleged failure of defendants to protect him from harm. *See* Moseley Decl., ¶¶ 8-10; Lopez Decl., ¶¶ 1, 4.

The Court finds that the foregoing evidence is sufficient to meet defendants' burden to "prove that there was an available administrative remedy, and the prisoner did not exhaust [it]." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). "Proper exhaustion demands compliance with an agency's deadlines and other . . . procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010). At the time plaintiff filed his grievance, the applicable regulations required him to "list all staff member(s) involved and shall describe their involvement in the issue." Cal. Code Regs., tit. 15 § 3084.2(a)(3) (repealed eff. June 1, 2020)).  As plaintiff admits, he did not do so. Doc. No. 73 at 3; *see also* Doc. No. 71-1 at 182 ("Q: Did you ever file a grievance against Cordero stating that he had ignored your complaints about Maldonado? A: I did not. Q: Any specific reason? A: No. Well, I did not. I kind of thought this one would cover it, you know."). Pursuant to the foregoing precedent and the regulations in effect at the time, this constitutes a failure to exhaust his available administrative remedies.

The Court further finds that plaintiff has not met his burden to "come forward with evidence showing that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The facts upon which plaintiff's allegations against Cordero are based were known to plaintiff as of the time he submitted his grievance, such that he could have included those details, but he chose not to. Plaintiff has also failed to present any evidence that the grievance procedures at Calipatria "operate[d] as a simple dead end," were "so

_____

amended provisions at sections 3480 through 3487." *Wimberly v. Cuevas*, No. 19cv8316-SI, 2021 WL 879881, at *4 n.1 (N.D. Cal. Mar. 9, 2021).

opaque" that no ordinary prisoner could navigate them, or that he felt too threatened or intimidated by prison staff to pursue his grievances. *See Ross v. Blake*, 578 U.S. 632, 643-44 (2016) (describing reasons why an administrative grievance procedure would be considered "unavailable"). Any such argument by plaintiff would be seriously undermined by evidence of plaintiff's willingness and ability to pursue not just the grievance at issue in this case, but several others regarding "theft" of his prison funds, the quality of the prison's food, certain disciplinary actions unrelated to the July 28, 2019 altercation with Maldonado, and need for office supplies. *See* Doc. No. 71-1 at 36, 47, 55 and 59. Indeed, plaintiff testified at his deposition that he has filed "in the ballpark of 10 to 15" grievances while in CDCR's custody, and conceded that he is "pretty familiar with the grievance process.'" *See id.* at 182-83.

On the record before it, the Court is persuaded that no reasonable jury could find in plaintiff's favor on the issue of exhaustion. *See Ram*, 807 F. Supp. 2d at 853. On this basis, the undersigned Magistrate Judge **RECOMMENDS** the District Court **GRANT** Defendants' Motion and **DENY** Plaintiff's Motion.

## B. Cordero's Deliberate Indifference

Exhaustion is a "threshold requirement," and plaintiff's failure to comply with this requirement means he is not entitled to "review of his claims in federal court." *McBride*, 807 F.3d at 988. Nevertheless, the Court finds that even if plaintiff had exhausted his administrative remedies, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim for Cordero's alleged deliberate indifference to, and failure to protect plaintiff from, a serious risk to his safety.

The Eighth Amendment requires prison officials to protect the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Yet, "not ... every injury suffered by one prisoner at the hands of another" is a constitutional violation. *Id.* at 834 (internal quotation marks, ellipsis, and citation omitted). Instead, a prison official violates the Eighth Amendment only when that official is "deliberately indifferent" to a prisoner's health or safety, defined as "know[ing] of and disregard[ing] an excessive risk to inmate health and

safety." *Id*. at 834, 837. Under this standard, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he must actually draw that inference. *Id.* "In other words, the official must demonstrate a subjective awareness of the risk of harm." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).

To prevail on his Eighth Amendment claim, plaintiff bears the burden of proving Cordero was subjectively aware of the risk of assault by Maldonado. Proof of the defendant's subjective knowledge may be demonstrated by direct evidence or by inference from circumstantial evidence. *Farmer*, 511 U.S. at 842. Plaintiff has not put forward either. *See Celotex*, 477 U.S. 322–23 (stating that summary judgment is proper where there is "a complete failure of proof concerning an essential element of the nonmoving party's case").

Plaintiff claims he told Cordero "two or three . . . different times" that Maldonado was "requesting [plaintiff's] paperwork" and that he was "becoming aggressive." Doc. No. 71-1 at 128-29. He also testified that he was suing Cordero for deliberate indifference because he "was requesting a single cell, and [Cordero] told me, no, I could not have that." *Id.* at 128. But plaintiff has not offered any evidence – such as Cordero's own testimony – that would support the inference that Cordero believed plaintiff to be in imminent danger from Maldonado. Even the circumstantial evidence falls short: plaintiff's own testimony is that when an inmate is asked by another inmate for his "paperwork," "***[m]ost of the time*** that means 'Are you a sex offender, or are you okay?'" Doc. No. 71-1 at 134. Plaintiff intuited that this was Maldonado's meaning at this time, and he interpreted Maldonado's comments and behavior as putting him at risk of an "immediate assault." *Id.* at 135. But the evidence that Cordero did likewise is nonexistent.

Even viewing the record in the light most favorable to plaintiff, the most the Court can infer is that Cordero ***should*** have known that plaintiff was in danger. This is not sufficient for liability. *See Farmer*, 511 U.S. at 838-39 (explaining that the "subjective approach" to deliberate indifference claims focuses on what "defendant's mental attitude actually was," and not "what it should have been"). Stated otherwise, the Eighth

Amendment prohibits deliberate, not negligent, indifference. *Id.* at 835 (noting that "'deliberate indifference' describes a state of mind more blameworthy than negligence").

The Court finds that the record before it is devoid of any evidence upon which a reasonable juror could find that Cordero knew of, and failed to protect plaintiff from, an excessive risk to plaintiff's safety. Accordingly, and to the extent the District Court does not adopt the undersigned's findings with respect to plaintiff's failure to exhaust his administrative remedies, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion and **GRANT** Defendants' Motion on the alternative ground that plaintiff has failed to adduce evidence to support his claim that Cordero violated his Eighth Amendment rights.

## C. Injunctive Relief

Defendants also move for summary judgment on plaintiff's "official capacity claim" against Whitman, and both plaintiff and defendants devote considerable argument to whether Whitman knew of, but failed to protect plaintiff from, a risk to his safety, entitling him to injunctive relief. *See* Doc. No. 71 at 22-25; *see also* Doc. No. 68 at 6-8. The undersigned has not considered any of these arguments, given that the District Court quite plainly found that plaintiff failed to state an Eighth Amendment failure-to-protect claim against Whitman arising out of her response to plaintiff's February 14, 2020 grievance. *See* Doc. No. 37 at 8 (finding that plaintiff failed to plead facts sufficient to support such a claim). That is the law of the case, and the parties have not provided the Court with any reason to reconsider it. *See Milgard Tempering*, *Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1991) (explaining that under the law of the case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court," absent certain exceptions that do not apply here); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) (noting that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

To the extent the parties have interpreted the District Court's Order on Whitman's motion to dismiss as recognizing a plaintiff's request for injunctive relief as a separate and distinct constitutional "claim," that interpretation is misplaced. *See* Doc. No. 37 at 9 (denying motion to dismiss as to "plaintiff's Eighth Amendment official-capacity claim" against Whitman). "It is well settled that a claim for 'injunctive relief' standing alone is not a cause of action." *Kwai Ling Chan v. Chase Home Loans Inc*., No. C12-0273JLR, 2012 WL 1252649, at *3 (W.D. Wash. Apr. 13, 2012) (quoting *Jensen v. Quality Loan Serv. Corp*., 702 F.Supp.2d 1183, 1201 (E.D.Cal.2010)). Instead, a plaintiff must prevail on an independent cause of action for which injunctive relief is an available remedy. *See, e.g.*, *Marine Carpenters Pension Fund v. Puglia Marine*, *LLC*, 382 F. Supp. 3d 1134, 1147–48 (W.D. Wash. 2019) (stating that "injunctive relief is inappropriate when there has been no alleged violation of the law") (citing *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 193(1978)); *see also Jensen*, 702 F.Supp.2d at 1201 ("An injunction is a remedy, not a separate claim or cause of action."). Bearing this authority in mind, any reading of the District Court's order on Whitman's Motion to Dismiss as recognizing a standalone "claim for injunctive relief" against Whitman is unsupportable. *See* Defendants' Motion at 24.

To reiterate, when the District Court issued its Order on Whitman's Motion to Dismiss, it disposed of plaintiff's claims that *Whitman* failed to protect him, whether brought under the Eighth Amendment or PREA. Doc. No. 37 at 9. But, because Cordero had not yet appeared, plaintiff had (at that point) a viable failure-to-protect claim against *Cordero*. *See id.* The District Court reasoned that if plaintiff were to prevail on his claim that Cordero violated his Eighth Amendment rights, and sought injunctive relief for that violation, such remedy could only have been pursued against Whitman in her official capacity as the official at Calipatria with the authority to assign plaintiff to a single cell. *See id.* at 8. The District Court explained that "[t]he Eleventh Amendment bars a prisoner from seeking monetary damages in a § 1983 action against state actors sued in their official capacities . . . [but] does not bar actions against state officials seeking prospective injunctive relief." *Id.* (citing *Will v. Michigan*, 491 U.S. 58, 66 (1989) and *Quern v. Jordan*,

44 U.S. 332, 337 (1979)); *accord Cornwell v. California Bd. of Barbering and Cosmetology*, 962 F.Supp. 1260, 1265 (S.D. Cal. 1997) (explaining that "[s]tate officials acting in their official capacity . . . are 'persons' for the purposes of § 1983 when sued only for prospective injunctive relief"). The District Court further found that since plaintiff had satisfied the procedural requirements for naming Whitman in her official capacity, she would remain in the case for the purpose of providing any injunctive relief for which plaintiff might be eligible. *See* Doc. No. 37 at 9 (citing *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)).[10]

As explained above, plaintiff's Eighth Amendment failure-to-protect claim against Cordero fails. Because there is no predicate constitutional violation at issue, the Court further finds that plaintiff is not entitled to injunctive relief and **RECOMMENDS** that any claim to such relief be **DENIED**.

**D. Constitutionality of Section 3269**

Plaintiff argues as an alternative basis for injunctive relief that Section 3269 – and, more specifically, the "criteria" set forth therein for determination of single-cell housing classification – is "unconstitutional." Plaintiff's Motion at 7; *see also* Doc. No. 71-1 at 191-92 ("Q: The injunctive relief you are seeking is to have a single cell; is that correct? A: Correct. Q: Okay. And you're claiming the policy is unconstitutional as applied to sex offenders; is that correct? A: That's correct.").

For the reasons outlined above, the undersigned does not read plaintiff's Complaint as stating, or the District Court's Order on Whitman's Motion to Dismiss as recognizing,

---

[10] These findings are also consistent with the District Court's February 18, 2021, Order denying plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order. Doc. No. 30. The District Court denied plaintiff's Motion because it found that plaintiff was unlikely to succeed on his Eighth Amendment claims against Whitman and Cordero arising out of the assault on plaintiff by his cellmate. *See id.* at 5, 7.

an independent claim regarding the constitutionality of Section 3269.[11] However, affording plaintiff all benefit of the doubt as a *pro se* litigant, the Court nevertheless finds that even if plaintiff stated a claim regarding the "unconstitutional criteria" stated in Section 3269, summary judgment in defendants' favor is warranted as to that claim. Preliminarily, plaintiff has neither alleged nor proffered any evidence that Whitman exercises any authority over the adoption of CDCR policy or bears the responsibility to ensure that those policies do not violate the U.S. Constitution. *See Hartmann*, 707 F.3d at 1128 (finding that officials who had such authority and responsibility were "the proper official-capacity defendants").

Moreover, plaintiff argues that the criteria for single-cell consideration stated in Section 3269, subsection (d), are "unconstitutional" because he "should not have to wait to [b]e assaulted multiple times before being considered for safe housing in a single cell." Plaintiff's Motion at 7. Yet, as defendants correctly point out, the regulation does not demand that plaintiff – or any other inmate – await multiple instances of victimization before single-cell housing will be considered. *See* Defendants' Motion at 8, 24. On a plain reading of the text, Section 3269(d) provides that prison staff *must* assess an inmate for single-cell status whenever an inmate demonstrates a history of violent or predatory behavior towards a cellmate or has experienced "documented and verified" in-cell victimization, and that such history *must* be considered during the assessment. Cal. Code Regs., tit. 15, § 3269(d). It does not prevent prison staff from assessing an inmate's eligibility for single-cell classification at any *other* time, or from considering any *other* factors in support of single-cell classification whenever such assessment is made. In fact, the regulation identifies a non-exhaustive list of factors that prison staff should consider when making housing decisions, which are reviewed on a yearly and *ad hoc* basis. *See*

---

[11] Indeed, plaintiff's allegation is that Whitman failed to follow "the correct procedure as outlined in title 15 [section] 3269(d)(2)" by approving him for double celling. *See* Doc. No. 1 at 16.

Whitman Decl., ¶ 2. The Court declines to find the regulation unconstitutional based on plaintiff's misreading of it.

Plaintiff asserts that Section 3269 is unconstitutional as to sex offenders *per se* because sex offenders are so frequently targeted by other inmates that they should automatically be considered in "imminent danger[]" of violence and unable to house safely in a double cell. Plaintiff's Motion at 7. In support of this position, however, plaintiff merely recycles his previous arguments why he *personally* "need[s] the extra protection of a single cell."[12] *Id.* at 8. For the reasons stated in this Report and Recommendation, and in the District Court's Order on defendants' Motion to Dismiss, those arguments do not establish that plaintiff's constitutional rights have been violated – much less those of an entire class of persons.

The undersigned reiterates its conclusion that plaintiff's Complaint does not state an independent claim that Section 3269 is unconstitutional as applied to sex offenders. Should the District Court decline to adopt these findings, the undersigned **RECOMMENDS** in the alternative that Defendants' Motion be **GRANTED** and Plaintiff's Motion be **DENIED** as to any such claim, because plaintiff has failed to offer any factual or legal support for it. *See Oracle*, 627 F.3d at (affirming summary judgment where "[p]laintiffs' theory [was] unsupported by the record").

## RECOMMENDATION AND ORDER

Having carefully considered the evidence presented, the applicable law, and the parties' arguments, the Court finds that no reasonable juror could find that plaintiff exhausted his available administrative remedies. The Court further finds that no reasonable juror could conclude that Cordero knew of, but disregarded, an excessive risk to plaintiff's

---

[12] This argument is undermined by plaintiff's own testimony that, as a convicted child rapist, he felt "comfortable" celling with other child molesters. Doc. No. 71-1 at 116. In fact, in 2020 he was doing just that until "personality differences" ended the pair's living arrangement. *Id*.

safety, and that because plaintiff's Eighth Amendment claim against Cordero fails he is not entitled to injunctive (or any other) relief.  The Court also finds that even if plaintiff adequately pled a claim that Section 3269 is unconstitutional, he has failed to support that claim legally or factually.

Accordingly, and for the reasons stated herein, the undersigned Magistrate Judge **RECOMMENDS** that the District Court: (1) adopt this Report and Recommendation in its entirety; (2) **DENY** Plaintiff's Motion for Summary Judgment [Doc. No. 68]; (3) **GRANT** Defendants' Motion for Summary Judgment [Doc. No. 71]; and (4) enter judgment in defendants' favor accordingly.

**IT IS HEREBY ORDERED** that no later than September 21, 2022, any party to this action may file written objections to this Report and Recommendation with the District Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the District Court and served on all parties no later than October 5, 2022. Failure to file objections within the specified time may waive the parties' right to raise those objections on appeal of the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1158 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 22, 2022

Hon. Karen S. Crawford
United States Magistrate Judge