UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DAVALL,<br>CDCR #AW-8294,<br><br>                              Plaintiff,<br><br>          vs.<br><br>A. CORDERO; D. WHITE;<br>WHITMAN,<br><br>                              Defendants. | Case No.:  20-CV-1968 JLS (KSC)<br><br>**ORDER (1) OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, (2) ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (4) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 68, 71, 79, 80) |

        Presently before the Court is Plaintiff Joseph Davall's ("Plaintiff" or "Davall") Motion for Summary Judgment ("PMSJ," ECF No. 68). Defendants A. Cordero and Whitman (collectively, "Defendants") filed their own Motion for Summary Judgment ("DMSJ," ECF No. 71), to which Plaintiff filed a Response in Opposition ("Plaintiff's Opp'n," ECF No. 73). Defendants then submitted an Opposition/Reply to the Cross-Motions for Summary Judgment ("Defendants' Opp'n/Reply," ECF No. 75), and Plaintiff

filed a Reply thereto ("Plaintiff's Reply," ECF No. 76).   Also before the Court is Magistrate Judge Karen S. Crawford's Report and Recommendation ("R&R," ECF No. 79) advising the Court to deny Plaintiff's Motion and to grant Defendants' Motion. Plaintiff filed Objections to the R&R ("Objs.," ECF No 80), and Defendants submitted a Reply thereto ("R&R Reply," ECF No. 81).   Having carefully considered Plaintiff's Complaint ("Compl.," ECF No. 1), Magistrate Judge Crawford's R&R, the Parties' arguments, and the law, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Plaintiff's Objections, **ADOPTS IN PART** and **REJECTS IN PART** the R&R, **DENIES** Plaintiff's Motion, and **GRANTS** Defendants' Motion.

## BACKGROUND

In 2015, a jury found Plaintiff guilty of raping a 12-year-old girl, as well as other associated offenses.   *See* PMSJ at 1; ECF No. 71-1 at 87–88; ECF No. 71-2 at 26–28. Plaintiff is currently serving a sentence of life without parole at Calipatria State Prison. ECF No. 71-1 at 90.   Plaintiff claims that his status as a sex offender subjects him to violence by his cellmates, but Defendants have failed to take appropriate measures to protect him from such violence.   *See generally* Compl.; PMSJ.   Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on October 5, 2020, alleging Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to protect him from an excessive risk to his safety.   *See* Compl. at 1–5.   Plaintiff further alleged that Defendant Whitman violated Prison Rape Elimination Act ("PREA") guidelines.   *Id.* at 5.   Plaintiff requests compensatory and punitive damages, as well as an injunction preventing Defendants from placing him in a "double cell" (a prison cell shared with another inmate).[1]   *Id.* at 7.

/ / /

/ / /

---

[1] Plaintiff also requested restoration of 180 days of lost credits and an emergency temporary court order for a "single cell" (a prison cell with no cellmates).  Compl. at 7.  The Court ultimately denied those requests.  *See* ECF No. 4 at 7–9; ECF No. 30.

At this stage of the proceedings, only Plaintiff's Eighth Amendment official capacity claim against Defendant Whitman and Eighth Amendment individual capacity claim against Defendant Cordero remain. *See generally* ECF Nos. 4, 37. On November 5, 2020, the Court dismissed Plaintiff's Fourteenth Amendment claims pursuant to *sua sponte* screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).[2] *See* ECF No. 4 at 5–9. Next, in a June 1, 2021 Order granting in part and denying in part a Motion to Dismiss from Defendant Whitman, the Court dismissed Plaintiff's Eighth Amendment individual capacity claim against Defendant Whitman for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), ECF No. 30 at 5–8, as well as Plaintiff's PREA claim against Defendant Whitman, as that act does not provide a private cause of action, *id.* at 9–10.

Magistrate Judge Crawford's R&R contains a thorough, detailed, and accurate recitation of the remaining relevant facts and procedural history of this action, to which Plaintiff has not objected. *See* R&R at 2–9. This Order incorporates by reference the background as set forth therein.

## LEGAL STANDARDS

### I.   Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R. The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72

---

[2] Plaintiff alleged Defendant White only violated his Fourteenth Amendment rights. *See* Compl. at 2. Therefore, the Court's pre-answer screening resulted in the dismissal of all claims against Defendant White.

advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## II.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by

4

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

Finally, before getting to the merits of the Parties arguments, the Court must briefly address one of Plaintiff's objections. Despite submitting his own Motion for Summary Judgment, Plaintiff argues that summary judgment is inappropriate at this time as there exist genuine disputes of material fact. *See* Objs. at 6. The Court disagrees. All twelve of Plaintiff's "facts in dispute," labeled A through L, are either not facts (D, F, H, J, L), not in genuine dispute (A, B, C, E, I, K), or not material (G). *See* Plaintiff's Opp'n at 7–15. Accordingly, the Court **OVERRULES** this objection.

## ANALYSIS

The Parties' arguments can be organized into three general categories: (1) whether Plaintiff exhausted available administrative remedies, DMSJ at 10–12; (2) whether Defendant Cordero violated Plaintiff's Eighth Amendment rights through deliberate indifference to Plaintiff's safety, PMSJ at 4–5; DMSJ at 12–15; and (3) whether Plaintiff is entitled to injunctive relief on the basis of his official capacity claim against Whitman, PMSJ at 2–3, 5–6; DMSJ at 15–18. The Court will analyze each of these issues in turn.

## I.  Exhaustion

### A.  *The Parties' Arguments*

Defendants assert that Plaintiff failed to exhaust his available administrative remedies before filing suit. DMSJ at 10–12. "In order to properly exhaust, the grievance must contain at least enough factual specificity to put the prison on notice of the nature of the wrong for which the prisoner seeks redress," Defendants note. *Id.* at 11 (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). While Plaintiff did administratively exhaust one grievance filed on February 14, 2020, the exhausted grievance did not name

/ / /

any of the Defendants and therefore was not sufficient to put Defendants on notice of the claims against them, in Defendants' view.  *Id.*

In response, Plaintiff asserts that he was not required to specifically name the Defendants to exhaust the available administrative remedies.  Plaintiff's Opp'n at 2.  Plaintiff cites *Snyder v. Riverside County*, 819 Fed. App'x 514, 515 (9th Cir. 2020), for the proposition that "[p]risoners are required to exhaust <u>only</u> available administrative remedies."  *Id.* at 3 (emphasis in original).  Plaintiff claims that "there is no available Remedie [sic] to complaining about the Person rather than the action."  *Id.* at 2.  According to Plaintiff, had he "specifically named Defendants in [his] appeal there is no Available Remedie [sic] within the Prison to correct the constitutional violation.  Therefor [sic] it is the operative fact of the single cell issue that satisfies the exaustion [sic] Requirement Because that is where the Remedie [sic] is available."  *Id.* at 3.

### B.  *Magistrate Judge Crawford's Findings*

Magistrate Judge Crawford found "the evidence of plaintiff's failure to exhaust irrefutable."  R&R at 11.  Judge Crawford first addressed Plaintiff's argument that he merely had to assert the "operative fact" of his request for a single cell in order to satisfy the exhaustion requirement.  That may have been true for Plaintiff's claim of deliberate indifference as to Defendant Whitman, Judge Crawford counters, but this Court already dismissed Plaintiff's claim for deliberate indifference as to Defendant Whitman.  *Id.*

As to Defendant Cordero, the February 14, 2020 grievance only states that Plaintiff's classification for double-celling "is a safety issue" and that Plaintiff's past cell assignments "caused [him] harm," Judge Crawford notes.  *Id.*  "Cordero is not identified by name, and there is no information whatsoever that resembles the allegations in the Complaint against Cordero," says Judge Crawford.  *Id.*  Moreover, Judge Crawford continues, Plaintiff's replies to prison officials' first and second level responses do not identify Defendant Cordero by name and do not state any facts that form the basis of Plaintiff's Eighth Amendment claim against Defendant Cordero.  *Id.*

/ / /

This evidence, along with declarations from two prison officials stating that the February 14, 2020 grievance was Plaintiff's only grievance mentioning his single-cell request and the alleged failure of Defendants to protect him, were sufficient to meet Defendants' burden of showing that Plaintiff failed to exhaust his administrative remedies, according to Judge Crawford. *Id.* at 12–13. Judge Crawford further noted that California prison regulations at the time Plaintiff filed his grievance required inmates to "list all staff member(s) involved and . . . describe their involvement in the issue," but Plaintiff did not do so. *Id.* at 13 (citing Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed eff. June 1, 2020)). Finally, Judge Crawford concluded that Plaintiff did not provide sufficient evidence demonstrating that there was some barrier that prevented him from using the administrative remedies available to him. *Id.* at 13–14.

### C.    *Plaintiff's Objections & Defendants' Reply*

Plaintiff objected to Judge Crawford's findings regarding exhaustion. *See* Objs. at 4–5. Plaintiff asserts that the remedy he is seeking is a single cell, and for that, he "fully exhausted all available remedys [sic]." *Id.* at 4. Plaintiff argues that a plain reading of § 3084 of title 15 of the California Code of Regulations reveals there is no requirement to specifically name a staff member and that Plaintiff followed the required procedure correctly. *Id.* at 5. Moreover, according to Plaintiff, "[b]oth [the Supreme Court and the Ninth Circuit] ha[ve] emphatically rejected the kind of overly stringent interpretation of the exaustion [sic] requirement that the magistrate reccomends [sic]." *Id.* (citing *Jones v. Bock*, 549 U.S. 199 (2007); *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Snyder*, 819 Fed. App'x 514).

In their Reply, Defendants urge the Court to overrule Plaintiff's objections because they "do not address his failure to state any facts in the grievance that resemble those in the Complaint asserted against Cordero." R&R Reply at 2. According to Defendants, "even if Davall was correct that he was not required to provide specific names, he still failed to exhaust because his grievance did not notify the prison of his claims." *Id.*

/ / /

### D.   Discussion

As a preliminary matter, the Court finds it necessary to clarify which of Plaintiff's claims are still live and therefore must have been exhausted.   Judge Crawford did not assess whether Plaintiff exhausted administrative remedies with respect to Defendant Whitman, concluding "[t]he only remaining Eighth Amendment claim is for Cordero's alleged deliberate indifference."   *See* R&R at 11.   Judge Crawford interpreted this Court's Order on Whitman's Motion to Dismiss as reasoning that "if plaintiff were to prevail on his claim that Cordero violated his Eighth Amendment rights, and sought injunctive relief for that violation, such remedy could only have been pursued against Whitman in her official capacity as the official at Calipatria with the authority to assign plaintiff to a single cell."   *Id.* at 17.   According to Judge Crawford, "[t]he District Court further found that since plaintiff had satisfied the procedural requirements for naming Whitman in her official capacity, she would remain in the case for the purpose of providing any injunctive relief for which plaintiff might be eligible."   *Id.* at 18. Plaintiff's Objections challenge this finding, arguing that this Court "retained Whitman in her official capacity, not as a remedial defendant as the magistrate finds But due to a 8th amendment cause of action."   Objs. at 1.   The Court thus reviews this finding de novo.

The Court finds the R&R misinterpreted the Court's findings in the Order on Whitman's Motion to Dismiss.   In response to Defendant Whitman's contention that Plaintiff had not "stat[ed] a viable official-capacity Section 1983 claim against [her]," the Court explained that plaintiffs seeking injunctive relief against the State "need only [1] identify the law or policy challenged as a constitutional violation and [2] name the official within the entity who can appropriately respond to injunctive relief."   ECF No. 37 at 8–9 (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (internal citations omitted)).

Here, Plaintiff sued Defendant Whitman in her official capacity and sought injunctive relief in the form of a single cell assignment.   Compl. at 2, 7.   While Plaintiff did not plead an Eighth Amendment claim against Whitman, the Court broadly construed

the Complaint to state such a claim against Whitman in its *sua sponte* screening order. *See* ECF No. 4 at 9. In its Order on Whitman's Motion to Dismiss, the Court further found that Plaintiff alleged (1) that CDCR's policy of not providing inmates with a single cell until after violence against them had occurred was unconstitutional and (2) that Whitman, the "[Calipatria] official who responded to his request for a single cell," was the appropriate official to handle his request for injunctive relief. ECF No. 37 at 9; *see also Hartmann*, 707 F.3d at 1127 ("A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."). Therefore, Plaintiff "adequately alleged that Whitman is the 'proper official-capacity' defendant for his Eighth Amendment claims." ECF No. 37 at 9. The Court concluded that "Defendant Whitman's Motion to Dismiss *Plaintiff's Eighth Amendment official-capacity claim against her* is denied." *Id.* (emphasis added and emphasis in original omitted). On the other hand, the Court dismissed Plaintiff's Eighth Amendment *individual capacity* claim against Whitman. *Id.* at 8. The Court found that "Plaintiff's Complaint fails to sufficiently allege any specific facts that would demonstrate[] that Whitman was aware of a risk to his safety." *Id.* at 7.

The Court now clarifies that in the Order on Whitman's Motion to Dismiss, the Court ruled on a freestanding Eighth Amendment official capacity claim against Whitman, which was not, and has not since, been dismissed. Accordingly, it is necessary to determine whether Plaintiff exhausted available administrative remedies with respect to Plaintiff's claims against Defendant Whitman, as well as Defendant Cordero. *See* 42 U.S.C. § 1997e(a) (exhaustion requirement mandatory for all actions concerning prison conditions brought under § 1983); *Otto v. Fed. Bureau of Prisons*, No. CV 12-6014-MMM CW, 2014 WL 497279, at *2 n.1 (C.D. Cal. Feb. 6, 2014) (official capacity suit would be subject to the administrative exhaustion requirement under 42 U.S.C. § 1997(e)). Consequently, the Court **SUSTAINS** the objection regarding the official capacity claim against Whitman and **REJECTS** this portion of the R&R.

1

         *1.*    *Legal Standard*

2

     The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action

3

shall be brought with respect to prison conditions under section 1983 of this title, or any

4

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

5

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

6

The exhaustion requirement is mandatory, and "a court may not excuse a failure to

7

exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The PLRA's language, however,

8

contains a qualifier: the administrative remedy must be "available" to the prisoner. *See*

9

*id.*; 42 U.S.C. § 1997e(a). An inmate, therefore, "need not exhaust unavailable

10

[remedies]." *Ross*, 578 U.S. at 642. "To be available, a remedy must be available as a

11

practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162,

12

1171 (9th Cir. 2014) (internal quotations omitted). The Supreme Court has identified

13

"three kinds of circumstances in which an administrative remedy, although officially on

14

the books, is not capable of use to obtain relief": (1) an exhaustion procedure operates as

15

a "dead end," such as when officers are "unable or consistently unwilling to provide any

16

relief to aggrieved inmates"; (2) when the procedure is "so opaque that it becomes,

17

practically speaking, incapable of use"; and (3) "when prison administrators thwart

18

inmates from taking advantage of a grievance process through machination,

19

misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

20

     "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must

21

plead and prove.'" *Albino v. Baca*, 747 F.3d at 1166 (citing *Jones*, 549 U.S. at 204).

22

"The defendant's burden is to prove that there was an available administrative remedy,

23

and that the prisoner did not exhaust that available administrative remedy." *Id.* at 1172.

24

"Once the defendant has carried that burden, the burden shifts to the prisoner to come

25

forward with evidence showing that there is something in his particular case that made

26

the existing and generally available administrative remedies effectively unavailable to

27

him." *Calderon v. Koenig*, No. 19-CV-07949-HSG, 2021 WL 3675210, at *6 (N.D. Cal.

28

Aug. 19, 2021).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  Moreover, "[t]he level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)); *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting *Jones*, 549 U.S. at 218)).

At the time Plaintiff filed his grievance on February 14, 2020, California Code of Regulations Title 15, §§ 3084–3084.9 (2019) (repealed eff. June 1, 2020),[3] controlled grievance procedures and exhaustion requirements for California inmates.  *See Fordley v. Lizarraga*, 18 F.4th 344, 349 n.1 (9th Cir. 2021) ("[W]e cite to the version of the California Code of Regulations in effect at the time [appellant] filed his . . . grievance."); *see also* Declaration of Howard E. Moseley (ECF No. 71-4) ¶ 6 ("If filing a grievance before June 1, 2020, an offender was required to follow the procedures set forth in CCR, title 15, sections 3084-3085 (repealed effective June 1, 2020).").  Section 3084.1 afforded California inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."

Under § 3084.2(a), inmates were required to submit a CDCR Form 602 describing "the specific issue under appeal and the relief requested" to initiate the grievance appeal

---

[3] "On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487." *Wimberly v. Cuevas*, No. 19-CV-08316-SI, 2021 WL 879881, at *4 n.1 (N.D. Cal. Mar. 9, 2021), *aff'd sub nom. Wimberly v. Alician*, No. 21-15720, 2022 WL 1769613 (9th Cir. June 1, 2022).

11

process.  "In order to exhaust available administrative remedies within this system, a prisoner [was required to] . . . proceed through several levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee."  *Espinoza v. Lomeli*, No. 16-CV-06197-YGR (PR), 2018 WL 2471456, at *4 (N.D. Cal. June 4, 2018) (citing Cal. Code Regs. tit. 15, § 3084.5).  Unless otherwise stated in the regulations, "all appeals [were] subject to a third level of review . . . before administrative remedies [were] deemed exhausted."  Cal. Code of Regs. tit. 15, § 3084.1(b) (repealed eff. June 1, 2020).  Inmates were required to submit their appeals within 30 calendar days of the "occurrence of the event or decision being appealed" unless the grievance dealt with allegations of sexual violence or staff sexual misconduct.  Cal. Code of Regs. tit. 15, §§ 3084.8(b)(1)–(4).

The regulations mandated that inmates provide certain details about the subject of the grievance on the 602 form to exhaust administrative remedies.  Section 3084.2(a)(3) required the inmate to "list all staff member(s) involved and . . . describe their involvement in the issue," or, if no identifying information about the staff member was known, "to provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Section 3084.2(a)(4) required the inmate to "state all facts known and available to him/her regarding the issue being appealed at the time" the grievance was submitted.  Further, the regulations stated that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602."  Cal. Code of Regs. tit. 15, § 3084.1(b) (repealed eff. June 1, 2020).

Nonetheless, the Ninth Circuit has made clear that "[t]he grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."  *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016).  "Accordingly, the primary inquiry is whether the grievance puts prison officials

'on notice of the nature of the wrong alleged,' such that it 'allow[s] prison officials to take appropriate responsive measures.'" *Harmon v. Lewandowski*, No. 220CV09437VAPMRWX, 2021 WL 6618681, at *9 (C.D. Cal. Nov. 30, 2021) (quoting *Reyes*, 810 F.3d at 658–59), *judgment entered*, No. 220CV09437MEMFMRWX, 2022 WL 1161142 (C.D. Cal. Mar. 31, 2022).

Moreover, in *Reyes v. Smith*, the Ninth Circuit established that prison officials may waive the requirement that inmates comply with the grievance procedure rules in order to exhaust administrative remedies.  810 F.3d 654, 658 (9th Cir. 2016).  *Reyes* held that "a prisoner exhausts 'such administrative remedies as are available' under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Id.* at 658 (internal citations omitted).  However, in order to exhaust administrative remedies as to defendants who were not identified in a grievance, "there must be a sufficient connection between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had notice of the alleged deprivation and an opportunity to resolve it." *McClure v. Chen*, 246 F. Supp. 3d 1286, 1291 (E.D. Cal. 2017) (internal quotations omitted); *Franklin v. Lewis*, No. 13-CV-03777-YGR (PR), 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016) (same); *see also Reyes*, 810 F.3d at 658–59 (finding inmate exhausted claims against doctors not named in the grievance, as the grievance plainly put prison on notice that inmate was complaining about denial of pain medication by defendant doctors, and prison could "easily identif[y]" role and involvement of unidentified doctors on Pain Management Committee in the decision-making process).

### 2.   Defendant Cordero

The Court finds that Defendants have carried their burden of demonstrating there were available administrative remedies for Plaintiff and that Plaintiff failed to exhaust those administrative remedies as to his Eighth Amendment claim against Defendant Cordero.

1    Defendants have conclusively established that there were available administrative

2 remedies for Plaintiff.  The undisputed evidence shows that during the relevant period,

3 "California provide[d] an administrative remedies system for California prisoners to

4 complain about their conditions of confinement," *Wimberly*, 2021 WL 879881, at *5, and

5 that between January 1, 2019, and February 22, 2022, Plaintiff used that process to

6 submit at least five grievances while housed at Calipatria State Prison.  *See* ECF No. 71-1

7 at 25; Declaration of P. Lopez ("Lopez Decl.," ECF No. 71-5) ¶¶ 3–4, 6.  It is also

8 undisputed that only one of Plaintiff's grievances related to his request for a single cell

9 assignment (the "Single Cell Grievance") and that Plaintiff administratively exhausted his

10 remedies as to that specific grievance.⁴  *See* Moseley Decl. ¶¶ 9–10; Lopez Decl. ¶¶ 5–6.

11 Importantly, however, neither party disputes that the Single Cell Grievance fails to

12 mention Defendant Cordero.  The issue, then, is whether the Single Cell Grievance

13 exhausted Plaintiff's administrative remedies as to the Eighth Amendment deliberate

14 indifference claim against Cordero, as well as the request for single cell placement.

15    In order to properly exhaust his administrative remedies for his claim against

16 Cordero, Plaintiff was required to name Cordero, or at least provide information that

17 reasonably could have assisted in his identification, *see* Cal. Code Regs. tit. 15,

18 § 3084.2(a)(3), and provide all facts known regarding Cordero's alleged deliberate

19 indifference, *see id.* § 3084.2(a)(4).  Alternatively, the Single Cell Grievance must have

20 been sufficiently connected to the claims against Cordero, such that prison officials were

21 notified of Plaintiff's claims against him and addressed the merits of the claim at each

22 step of the appeals process despite any procedural defects in the grievance.  *See Reyes*,

23 810 F.3d at 658; *McClure*, 246 F. Supp. 3d at 1291.  Plaintiff's grievance, however, states

---

⁴ According to the declaration of Howard E. Moseley, Associate Director of the Office of the Appeals
for the California Department of Corrections and Rehabilitation ("CDCR"), the second level of review
served as CDCR's final response to Plaintiff's allegations because the Office of Appeals was unable to
respond to Plaintiff's third level appeal within the statutorily required deadline of sixty calendar days.
Moseley Decl. ¶ 9.

only that the nature of his commitment offense is a "safety issue for Double cell" pursuant to California Code of Regulations Title 15, § 3269; that past cell assignments had "caused [him] harm"; and that he was requesting a single cell "to protect [his] safety, and or, the safety of [Plaintiff's] celley seeking to harm [him] for the nature of committement [sic] offense." ECF No. 71-1 at 10. This fell short of the prison regulation's exhaustion requirements and was insufficient to put prison officials on notice of the nature of Cordero's alleged wrongs such that they could have appropriately responded.

Each step of the grievance process demonstrates that Cordero's alleged indifference to Plaintiff's safety was not expressly or impliedly raised by Plaintiff's grievance. First, Cordero is not mentioned in the grievance, nor is there any mention of Plaintiff's interactions with Cordero regarding his requests for single cell placement. *See* ECF No. 71-1 at 10. Plaintiff also failed to provide any details regarding the alleged threat to his safety or whether Cordero was aware of it. *See id.* Revealingly, Plaintiff testified that he "wasn't necessarily complaining that he -- that Cordero denied me a single cell"; rather Plaintiff said he "was just filing the grievance asking for a single cell." *Id.* at 182. If Plaintiff himself concedes that the grievance did not concern Cordero's deliberate indifference, it is unclear why the Court should come to an opposite conclusion.

Second, neither Defendant Whitman's first level response nor Chief Deputy Warden Moore's second level response to Plaintiff's grievance specifically mention Cordero. *See id.* at 27–29, 38–39. Both Whitman and Moore's responses were largely confined to discussion of the criteria the "classification committee" reviews in making housing assignments and Plaintiff's ineligibility for single-cell housing under those criteria. *See id.* at 28, 39. While Cordero was a member of the committees that recommended Plaintiff for double-cell housing in July 2019 and August 2019, *see* ECF No. 71-2 at 60–66, 67–73, there is a material difference between Cordero's involvement in the committees' housing recommendations and Cordero's alleged knowledge and

conscious disregard of a threat to Plaintiff's safety.  *See Miles v. Jackson*, No. 16-cv-05616-JSC, 2017 U.S. Dist. LEXIS 212122, at *7 (N.D. Cal. Dec. 27, 2017) ("Administrative remedies are not exhausted where the grievance, liberally construed, does not have the same subject and same request for relief as the prisoner's federal claim.").  Cordero's absence from Whitman and Moore's responses demonstrate that Plaintiff's grievance was not "sufficient[ly] connect[ed]" to Cordero's alleged deliberate indifference such that prison officials were aware of it.  *McClure*, 246 F. Supp. 3d at 1291.

Finally, Plaintiff's replies to the first and second level responses to his grievance likewise fail to mention Cordero or provide any facts that formed the basis of his claim against Cordero.  *See* ECF No. 71-1 at 8–9.

Thus, the Single Cell Grievance fell short of the exhaustion requirements and failed to "put prison officials on notice" of Plaintiff's deliberate indifference claim against Cordero.  *See* Cal. Code Regs. tit. 15, §§ 3084.2(a)(3)–(4); *Morton*, 599 F.3d at 946; *see also Martinez v. Swift*, No. C 13-3973 RS (PR), 2015 WL 1349525, at *2 (N.D. Cal. Mar. 25, 2015) (granting summary judgment where "grievance did not mention [defendant], or describe with any specificity his actions or words"); *Smith v. Mendoza*, No. 19-03750 BLF (PR), 2021 WL 930706, at *11 (N.D. Cal. Mar. 10, 2021) (finding failure to exhaust as to three defendants not named in original grievance, as "their involvement was not easily identified").

In light of the above findings, the Court concludes that Defendants have met their burden of showing that (1) an administrative remedy was available to Plaintiff and (2) that Plaintiff did not exhaust that remedy as to his claim against Cordero.  *Albino*, 747 F.3d at 1172 (9th Cir. 2014).  Accordingly, the burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Calderon*, 2021 WL 3675210, at *6.  The Court finds that Plaintiff has not met that burden.  Plaintiff has not provided any evidence that would tend to show that the

grievance process was effectively unavailable to him because it operated as a dead end, it was too vague, or prison officials thwarted his efforts, or any other similar reason.  *See Ross*, 578 U.S. at 643–44.  Moreover, Plaintiff testified that the reason he did not submit a grievance regarding Cordero's actions was not because he was prevented from doing so in any way; rather, he thought the grievance he submitted regarding his request for single cell status "would cover it."  ECF No. 71-1 at 182.  That assumption was incorrect.

Accordingly, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** this portion of the R&R.

### 3.    *Defendant Whitman*

As discussed above, Defendants have already carried their burden of demonstrating that there were available remedies for Plaintiff.  The Court now addresses whether Defendants have shown that Plaintiff failed to exhaust those administrative remedies as to his Eighth Amendment claim against Defendant Whitman.  The Court finds that Defendants have not met this burden.

As discussed above, Plaintiff's Single Cell Grievance merely stated that the nature of his commitment offense made it a safety issue to house him in a cell with other inmates and that he was requesting an assignment to a single cell.  ECF No. 71-1 at 10. Defendant Whitman is not mentioned in the grievance, nor is there any information provided that reasonably could have assisted in identifying her.  Thus, Plaintiff's grievance clearly did not comply with California Code of Regulations Title 15, §§ 3084.2(a)(3)–(4).  However, the Court finds that prison officials waived such requirements, *Reyes*, 810 F.3d at 658, and Plaintiff's grievance put prison officials on notice of the alleged deprivation, *McClure*, 246 F. Supp. 3d at 1291.

First, prison officials decided Plaintiff's grievance on the merits at each level of review despite the Single Cell Grievance's procedural shortcomings.  *See Reyes*, 810 F.3d at 658.  Whitman denied the grievance at the first level review, finding Plaintiff was "not eligible for single cell status" at the time.  *Id.* at 39.  This conclusion was based on Plaintiff's statements to two prison officials in February 2020 that he had no enemy or

safety concerns; Plaintiff's "placement score"; the classification committee's determinations in July and August that Plaintiff was eligible for double cell status; and a review of Plaintiff's disciplinary file, which indicated that Plaintiff was not eligible for single cell placement. *Id.* at 39. Moore denied Plaintiff's grievance at the second level review for the same reasons and additionally found that Plaintiff had not "presented any new information that would require a modification to the initial response." *Id.* at 28–29. Neither Whitman nor Moore denied Plaintiff's grievance due to his failure to name a particular staff member. ECF No. 71-1 at 27–29, 38–39. Defendants also argue that Plaintiff failed to exhaust his administrative remedies because he filed the grievance far past the 30-day deadline. DMSJ at 11. But Whitman and Moore did not deny the grievance on the basis of this procedural shortcoming, either. *See* ECF No. 71-1 at 27–29, 38–39.

Second, Whitman's and Moore's responses to Plaintiff's grievance clearly demonstrate that there was a "sufficient connection" between the claims in the grievance and the unidentified defendants such that the relevant prison officials "had notice of the alleged deprivation and an opportunity to resolve it." *McClure*, 246 F. Supp. 3d at 1291. As the Ninth Circuit has made clear:

> Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.

*Reyes*, 810 F.3d at 659 (internal quotations and citations omitted). Here, both Whitman and Moore understood that Plaintiff was challenging his assignment to a double cell under California Code of Regulations Title 15, § 3269, and both identified the classification committee as the body that initially determined that Plaintiff was eligible for double cell housing. *See* ECF No. 71-1 at 27–29, 38–39. In other words, the

reviewing officials easily sourced Plaintiff's grievance to the relevant policy, as well as the role and involvement of the relevant prison officials. Plaintiff's grievance, therefore, "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit": his denial of single cell housing. *Reyes*, 810 F.3d at 659.

The Court finds *Franklin v. Lewis* instructive. No. 13-CV-03777-YGR (PR), 2016 WL 4761081 (N.D. Cal. Sept. 13, 2016). There, the plaintiff submitted a grievance complaining that his legal mail had been mishandled by certain prison officials, whom he did not name in the grievance. *Id.* at *3. The grievance went through three levels of review. *Id.* After the grievance was denied at the third level, the plaintiff filed suit in federal court, naming as defendants five prison officials whose only involvement was reviewing and responding to the plaintiff's grievance. *Id.* The defendants argued that the plaintiff had not exhausted administrative remedies as to them because the "[p]laintiff's claim against the named [d]efendants was based on their processing of his [grievance] and could not have been fully vetted within the same grievance appeal, as *the issue had not happened until after the appeal was initiated* and was not addressed during the appeal process." *Id.* at *6 (internal quotations omitted) (emphasis added). The district court rejected this argument, finding that "it matter[ed] not that [the grievance] *only* complained of mishandling of legal mail because [d]efendants handled the *related* grievance." *Id.* (emphasis in original). Citing *Reyes*, the district court concluded that the grievance was sufficient to exhaust the plaintiff's administrative remedies because it "clearly put [the prison] officials on notice as to the nature of his grievance: that his legal mail was mishandled." *Id.* at 7.

Likewise, Whitman's involvement in the denial of Plaintiff's request for single cell housing arose *after* the grievance had already been filed. Nevertheless, because Whitman reviewed the grievance, and the grievance clearly put her and other prison officials on notice of the alleged deprivation and gave them an opportunity to resolve it, the Court finds that Plaintiff's failure to comply with the then-applicable regulations "is not a bar to his claim." *Franklin*, 2016 WL 4761081, at *7.

1    Accordingly, the Court **SUSTAINS** Plaintiff's objection as to whether the

2   grievance exhausted available administrative remedies as to his official capacity claim

3   against Whitman and **REJECTS** this portion of the R&R.

4   **II.    Eighth Amendment Individual Capacity Claim Against Defendant Cordero**

5        ***A.    Legal Standard***

6        "'[P]rison officials have a duty . . . to protect prisoners from violence at the hands

7   of other prisoners.'"  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-*

8   *Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  "It is not, however,

9   every injury suffered by one prisoner at the hands of another that translates into

10  constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

11  "A prisoner seeking relief for an Eighth Amendment violation must show that the

12  officials acted with deliberate indifference to the threat of serious harm or injury to an

13  inmate." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013).

14       Deliberate indifference has both objective and subjective components.  *Id*.  "First,

15  the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act

16  or omission must result in the denial of 'the minimal civilized measure of life's

17  necessities.'"  *Farmer*, 511 U.S. at 834.  For a claim based on failure to prevent harm,

18  "the inmate must show that he is incarcerated under conditions posing a substantial risk

19  of serious harm."  *Id.*  Second, under the subjective prong, the prison official must

20  "know[] of and disregard[] an excessive risk to inmate health or safety; the official must

21  both be aware of facts from which the inference could be drawn that a substantial risk of

22  serious harm exists, and he must also draw the inference."  *Id.* at 837.  Thus, a prison

23  official is liable under the Eighth Amendment "only if he knows that inmates face a

24  substantial risk of serious harm and disregards that risk by failing to take reasonable

25  measures to abate it."  *Id.* at 847.  "The standard of knowing for 'deliberate

26  indifference' . . . is one above mere suspicion, but below absolute certainty or intent to

27  inflict harm."  *Pesina v. Stockwell*, No. CV-10-441-JPH, 2012 WL 2395177, at *6 (E.D.

28  Wash. June 25, 2012).

**B.    The Parties' Arguments**

Plaintiff claims that Defendant Cordero violated his Eighth Amendment rights through deliberate indifference to risks to his health and safety.  In July 2019, Plaintiff was assigned to a double cell with inmate Maldonado.  ECF No. 71-1 at 134; ECF No. 71-6 ¶ 5.  Shortly thereafter, Maldonado began demanding to "see paperwork" from Plaintiff.  ECF No. 71-1 at 134.  Plaintiff interpreted this as a request for Plaintiff to provide documents showing that he was not a sex offender.  *Id.*; PMSJ at 4.  Plaintiff testified that he did not show his "paperwork" to Maldonado because that would have revealed that he was a sex offender, resulting in "immediate assault."  ECF No. 71-1 at 135; *see also* PMSJ at 4–5.  According to Plaintiff, "the Prison knows the other inmates are violent towards sex offenders."  PMSJ at 8.

Plaintiff informed Defendant Cordero that Maldonado was demanding to see his paperwork and requested on at least two occasions in July 2019 that he be placed in a single cell for his own safety.  *See* ECF No. 71-1 at 136–37; PMSJ at 4, 5.  Cordero denied the requests, allegedly telling Plaintiff that "the only way to get a single cell [wa]s to kill or attempt to kill [his] celley."  PMSJ at 5.  On July 28, 2019, Plaintiff and Maldonado got into a fight, during which Plaintiff struck Maldonado approximately twenty times and suffered two broken fingers.  *Id.*; ECF No. 71-1 at 147–49.  On the basis of these events, Plaintiff argues that "Defendant Cordero was clearly indifferant [sic] to the substantial risk to [his] safety."  PMSJ at 5.

Defendants argue that Plaintiff cannot establish the second element of an Eighth Amendment failure-to-protect cause of action: that Cordero knew of, and disregarded, an excessive risk to Plaintiff's safety.  DMSJ at 12–13.  According to Defendants, Plaintiff safely double-celled in the past, and Maldonado had no history of in-cell violence.  *Id.* at 13.  Moreover, Defendants contend that Plaintiff was on the safest yard at Calipatria and had never requested a new cell assignment or protective custody.  *Id.* at 14.  The fight between Plaintiff and Maldonado occurred outside of the cell, and the evidence suggests that Plaintiff, not Maldonado, was the aggressor, according to Defendants.  *Id.*  Following

20-CV-1968 JLS (KSC)

the fight, Plaintiff signed a "safety chrono" stating he felt safe returning to the yard, and the classification committee reapproved Plaintiff's double-cell status. *Id.* at 14–15. "Given the above," Defendants argue, "Cordero was unaware of any risk posed by Maldonado, and the prison, recognizing Davall's offense as a safety risk, acted and continues to act reasonably to ensure Davall's safety." *Id.* at 15.

### C.     Magistrate Judge Crawford's Findings

Magistrate Judge Crawford found that, even if Plaintiff had exhausted his administrative remedies as to his deliberate indifference claim against Cordero, Defendants are nevertheless entitled to summary judgment on this claim. R&R at 14. Judge Crawford found that Plaintiff had not put forth any evidence demonstrating that Cordero was subjectively aware of the risk of assault by Maldonado. *Id.* at 15. "The most the Court can infer," Judge Crawford concluded, "is that Cordero ***should*** have known that Plaintiff was in danger." *Id.* at 15. Such a showing is not sufficient for liability, Judge Crawford noted. *Id.* Accordingly, Judge Crawford recommended that this Court deny Plaintiff's Motion and grant Defendant's Motion in the event this Court disagreed with the findings pertaining to Plaintiff's failure to exhaust his administrative remedies as to Plaintiff's Eighth Amendment claim against Cordero. *Id.* at 15.

### D.     Plaintiff's Objections & Defendants' Reply

In his Objections to the R&R, Plaintiff points to Fifth Circuit and Supreme Court precedent for the proposition that an "obvious" risk may put prison officials on constructive notice of a threat to a prisoner's safety. Objs. at 3–4. "Prison officials are well aware that child molesters are in danger, 'the risk is obvious,' & 'officials must have known about it,'" Plaintiff contends. *Id.* at 4. Defendants assert that Plaintiff's objection "does not address the Court's ruling that there was no evidence in the record showing Cordero had the subjective knowledge required for satisfying an Eighth Amendment failure-to-protect cause of action." R&R Reply at 2.

/ / /

/ / /

### E.     Discussion

Contrary to Plaintiff's assertion, the Supreme Court in *Farmer v. Brennan* rejected the proposition that "a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." *See Farmer*, 511 U.S. at 842.  "[P]ermitting liability to be premised on obviousness or constructive notice" is an objective standard and "is not an appropriate test for determining the liability of prison officials under the Eighth Amendment." *Id.* at 841.  A trier of fact may, but need not, infer knowledge from obviousness. *Id.* at 844.  "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.*  Prison officials who knew of a substantial risk to an inmate's safety may also avoid liability if "they respond[] reasonably to the risk, even if the harm was not averted." *Id.*

Here, even if the Court assumes Plaintiff has sufficiently shown that he is "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, Plaintiff has not put forth any evidence demonstrating that Cordero was subjectively aware of a substantial risk of serious harm to Plaintiff.  Plaintiff only told Cordero that Maldonado was requesting to see his paperwork and that Plaintiff wanted a new cell.  ECF No. 71-1 at 138.  Plaintiff never claimed that Maldonado had explicitly threatened him with physical violence or any other punishment for being a sex offender. *See generally* Compl.; *see also* ECF No. 71-1 at 138.  Both Plaintiff and Maldonado had safely double-celled prior to the fight.  ECF No. 71-2 at 72; Whitman Decl. ¶ 5. According to a "Classification Committee Chrono" from July 2019, when the dispute with Maldonado was allegedly coming to a head, ECF No. 71-1 at 140, Plaintiff "stated he has no problem with his current cell partner and stated he has no problem being double celled," ECF No. 71-2 at 72.  After the fight with Maldonado, Plaintiff told two prison

23

officials that he and Maldonado could "safely program together" and that they "do not consider each other enemies." *See* ECF No. 71-1 at 264–65. Further, Defendants note that there are several steps that inmates can take to protect themselves in the event of a threat to their safety: request a new cell assignment from housing-unit staff, request protective custody, or appeal the classification committee's housing determinations, for example. DMSJ at 20–21. But Plaintiff did not avail himself of any of these measures. This evidence does not show that Cordero was aware of a substantial risk of serious harm to Plaintiff; in fact, it tends to prove the opposite.

Moreover, by Plaintiff's own account, a request to see paperwork does not always result in violence. Plaintiff testified that "[m]*ost of the time*, that means "Are you a sex offender, or are you okay? Are you good, or are you no good?" ECF No. 71-1 at 134 (emphasis added). Plaintiff also testified that "*usually* the policy is if someone comes into the cell and they are identified as a sex offender, then an assault will happen immediately. *Or* if that person has a parole date and doesn't want to get in trouble, *then they will ask the sex offender to leave the cell*." ECF No. 71-1 at 123 (emphasis added). Thus, at most, Plaintiff's complaints about Maldonado to Cordero might have raised a suspicion that problems could arise between the two. But "mere suspicion" is insufficient to demonstrate knowledge for an Eighth Amendment deliberate indifference claim. *Pesina*, 2012 WL 2395177, at *6.

Plaintiff argues that informing Cordero that Maldonado was asking to see Plaintiff's paperwork should have put Cordero on notice of an obvious threat to Plaintiff's safety because violence against sex offenders is pervasive in prison. Objs. at 3–4. The Supreme Court in *Farmer*, however, rejected such a test for liability of prison officials under the Eighth Amendment. *Farmer*, 511 U.S. at 841. It matters not whether the risk was obvious, whether Plaintiff's communications put Cordero on constructive notice, or even whether Cordero should have known of the risk. Plaintiff must prove that Cordero was actually aware of a substantial risk of serious harm and failed to take reasonable measures to prevent it. *See id.* at 847 ("[A] prison official may be held liable

under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."). As discussed above, Plaintiff has not done so. While the Supreme Court has held that a prison official's knowledge of a risk may be inferred from the risk's obviousness, the Court declines to make such an inference here, as the circumstances were not so inherently dangerous that Cordero's knowledge of them would necessarily signal a substantial risk of serious harm. *See id.* at 844 ("That a trier of fact may infer knowledge from the obvious, . . . does not mean that it must do so.").

Accordingly, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** this portion of the R&R.

## III. Eighth Amendment Official Capacity Claim Against Defendant Whitman

### A. *The Parties' Arguments*

One of the requirements for a plaintiff seeking injunctive relief against the State is to identify some constitutional violation to be enjoined. *See Hartmann*, 707 F.3d at 1127 ("[A] plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."); *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (noting that prisoner bringing non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement must "allege facts to state a colorable ongoing Eighth Amendment claim"). Other than the Eighth Amendment claim against Cordero, which the Court has denied, Plaintiff puts forth two other theories of unconstitutional conditions. The first is that Defendant Whitman was deliberately indifferent to a substantial risk of serious harm to Plaintiff in violation of his Eighth Amendment rights. *See* PMSJ at 2–3. This Court previously determined in its Order on Whitman's Motion to Dismiss, however, that Plaintiff failed to allege any facts that would plausibly show that Whitman knew of and disregarded a substantial risk to Plaintiff's safety, or that she failed to take reasonable

steps to abate such a risk.  *See* ECF No. 37 at 5–8.  The Court declines to revisit this issue.

As to the second theory, Plaintiff argues that California Code of Regulations Title 15, § 3269, is unconstitutional because it purportedly requires an inmate to be harmed before being considered for a single cell assignment.  Compl. at 5; PMSJ at 7.  Plaintiff's requested remedy for this constitutional violation is injunctive relief in the form of a single cell assignment.  Plaintiff also moved for the Court to "apply the safe housing injunction to all CDCR prisons as the claim does not become moot just because of a future transfer."  PMSJ at 8.  "So long as the Prison continues to mix sex offenders with those that sex offenders need protection from there exists a current & ongoing violation," in Plaintiff's view.  *Id.*

Defendants dispute Plaintiff's characterization of § 3269.  "The statute lists several factors to consider when classifying an inmate as double-cell or single-cell eligible, and the Department of Operations Manual instructs staff to use reasonable judgment and discretion," according to Defendants.  DMSJ at 17.  Further, Defendants argue that Plaintiff's claim for injunctive relief is moot "because he has been provided a single cell for two years and continues to reside in a single cell with no anticipated end date."  *Id.* at 17.  Moreover, granting injunctive relief here "would be the equivalent of the Court concluding that all persons convicted of sex offenses are entitled to single cells — an impermissibly broad intervention that would restrict CDCR's ability to house inmates safely and appropriately using available prison resources."  *Id.* at 18.

### B.    *Magistrate Judge Crawford's Findings*

Magistrate Judge Crawford did not interpret Plaintiff's Complaint or this Court's Order on Whitman's Motion to Dismiss as recognizing an independent Eighth Amendment official capacity claim against Whitman.  *Supra* pp. 8–9.  As discussed above, that interpretation was incorrect.  *Supra* pp. 8–9.  Nevertheless, Judge Crawford recommended, alternatively, that this Court grant Defendant's Motion and deny Plaintiff's Motion as to any such claim.  R&R at 20.  Magistrate Judge Crawford found

that Plaintiff was not entitled to injunctive relief because there was no predicate constitutional violation, as neither Cordero nor Whitman was deliberately indifferent to a risk to Plaintiff's safety. *Id.* at 16–18. Moreover, Judge Crawford found that, even if Plaintiff had stated a claim regarding the purported unconstitutionality of § 3269, Plaintiff "has neither alleged nor proffered any evidence that Whitman exercises any authority over the adoption of CDCR policy or bears the responsibility to ensure that those policies do not violate the U.S. Constitution." *Id.* at 19. Further, Judge Crawford found that Plaintiff mischaracterized the mandates of § 3269 and declined to find the statute unconstitutional on the basis of that misreading. *Id.* at 19–20. Finally, to the extent Plaintiff claimed that § 3269 was unconstitutional as applied to all sex offenders, this argument failed for the exact same reasons. *Id.* at 20.

### C.   Plaintiff's Objections & Defendants' Reply

In his Objections to the R&R, Plaintiff reiterates his argument that § 3269 requires that inmates be victimized before being assigned to a single cell. Objs. at 2–3. Plaintiff further argues that the statute requires a "pattern of abuse" to be established before single cell assignment. *Id.* at 3. Such preconditions violate the Eighth Amendment, which provides relief against imminent dangers as well as past harms, according to Plaintiff. *Id.* Finally, Plaintiff disputes the notion that granting him injunctive relief would affect CDCR's housing policies for any other inmates. *Id.* at 6.

In their Reply, Defendants simply contend that the statute is not unconstitutional. R&R Reply at 3.

### D.   Discussion

Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Hartmann*, 707 F.3d at 1127; *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating suit against state officials in their official capacities as a suit against the state of California). In an official-capacity suit, the plaintiff must demonstrate that a

policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166. In this case, the policy or custom being challenged is the housing assignment regulations found in California Code of Regulations Title 15, § 3269.

Upon arrival to a correctional facility or institution, inmates are screened for housing assignments. Cal. Code Regs. tit. 15, § 3269(a) (2019). The screening officials are required to evaluate all factors when making housing assignments. Cal. Code Regs. tit. 15, § 3269. Section 3269(a) provides a non-exhaustive list of housing assignment factors, including, for example: "[p]ersonal factors such as race," "[e]nemies and victimization history," "[p]revious housing status," [h]istory of in-cell assaults and/or violence," "[n]ature of commitment offense," and reports from prior cellmates that the inmate abused them sexually or otherwise.

"It is the expectation that all inmates double cell"; "[i]nmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice." Cal. Code Regs. tit. 15, § 3269. Section 3269(d), however, provides that "[s]ingle cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate." The section further provides:

> The following factors must be considered when evaluating single cell status, noting these factors are not exclusive of other considerations: (1) Predatory behavior is characterized by aggressive, repeated attempts to physically or sexually abuse another inmate. (2) Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

Cal. Code Regs. tit. 15, § 3269(d). Housing reviews are conducted on an annual basis, as well as after other triggering events, such as those mentioned in § 3269(d), when "an inmate leaves administrative segregation or a solitary housing unit," or "whenever single-cell status is recommended by custody or medical staff." Whitman Decl. ¶ 2. "If an

28

inmate's history or other considerations show the need for single-cell status, he will be given that status despite the general expectation of double-celling." *Palmer v. Vasquez*, No. 1:13-CV-1400 AWI JLT, 2015 WL 5021666, at *10 (E.D. Cal. Aug. 17, 2015) (citing § 3269(e)), *aff'd*, 696 F. App'x 782 (9th Cir. 2017).

Here, the Court finds that a plain reading of § 3269 undermines Plaintiff's claim that an Eighth Amendment violation is baked into the regulation. Nowhere in § 3269 is there a requirement that inmates be abused physically or sexually before they are eligible for single-cell assignment; much less that they be abused physically or sexually multiple times, as Plaintiff claims. Objs. at 2–3. Rather, after such abuse occurs, prison officials must evaluate the inmate's eligibility for single-cell housing, considering an inmate's predatory behavior or an inmate's documented instances of victimization. *See* Cal. Code Regs. tit. 15 § 3269(d). But that does not mean that prison officials cannot evaluate an inmate's housing assignment at any other time, and the factors listed in § 3269(d) are explicitly described as non-exhaustive. In other words, § 3269(d) does not attempt to define the limits of prison officials' ability to assign inmates to single-cell housing; it merely describes circumstances that mandate consideration for single-cell housing.

Consequently, the Court rejects Plaintiff's misreading of § 3269 and declines to find that the regulation is unconstitutional or contributed to Plaintiff's alleged deprivation. *See Rhodes v. Chapman*, 452 U.S. 337, 341 (1981) (holding double-celling inmates (in 63-square-foot cell) is not unconstitutional); *Smith v. Marshall*, No. CV 07-864-MWF (PJW), 2013 U.S. Dist. LEXIS 76218, at *4 (C.D. Cal. Mar. 18, 2013) ("A prisoner does not have a constitutional right to be housed in a single cell."); *Palmer*, 2015 WL 5021666, at *10 (finding § 3269's general policy of double-celling inmates was not a per se violation of the Eighth Amendment due to the individualized assessment required for an inmate's housing status); *cf. Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (rejecting argument "that there is some sort of 'one man, one cell' principle lurking in the Due Process Clause of the Fifth Amendment"). To the extent Plaintiff argues § 3269 is unconstitutional as applied to all sex offenders—which Plaintiff now denies, despite

specifically requesting the injunction apply to all CDCR prisons in his Motion—the Court rejects this argument for the same reasons provided above.

As the Court finds § 3269 did not contribute to any constitutional violation alleged by Plaintiff, Plaintiff's official capacity claim against Whitman must be denied.  *See Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166 ("[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."). Accordingly, the Court **OVERRULES** Plaintiff's objections regarding the constitutionality of § 3269 and **ADOPTS** this portion of the R&R.

## IV.   Remainder of the R&R

No Party objects to the remainder of Magistrate Judge Crawford's R&R.  *See generally* Objs.; R&R Reply.   Accordingly, having found no clear error, the Court **ADOPTS** the remainder of the R&R.

## CONCLUSION

In light of the foregoing, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Plaintiff's Objections (ECF No. 80), **ADOPTS IN PART** and **REJECTS IN PART** Magistrate Judge Crawford's R&R (ECF No. 79), **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 68), and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 71).  As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED**.

Dated:  February 2, 2023

Hon. Janis L. Sammartino
United States District Judge